STIRLING *et al. v.* LOGUE *et ux.*

(Division A. Sept. 23, 1929. Suggestion of Error Overruled, Oct. 21, 1929; Suggestion of Error Overruled, Nov. 4, 1929.)

[123 So. 825. No. 27953.]

*Green, Green & Potter* and *H. Chalmers Alexander,* all of Jackson, for appellants.

814

*Franklin, Easterling & Canizaro,* of·Jackson, *J. W. Cassedy,* of Brookhaven, and *W. C. Wells,* of Jackson, for appellees.

Argued orally by *Chalmers Alexander* and *Garner W. Green,* for appellant, and by *Lamar F. Easterling,* for appellee.

SMITH, C. J., delivered the opinion of the court.

This record presents two separate appeals from interlocutory decrees, one of which overruled a motion for the discharge of a receiver, and the other authorized the receiver to lease a portion of the real property in his hands for the year 1929.

The appellees, who are husband and wife, were the complainants in the court below, and the bill of complaint alleges, in substance:

That they were the owners of a large amount of real property, and some personalty, situated in Mississippi and Tennessee, part of the Mississippi property being two plantations in the delta portion of the state, both of which are heavily mortgaged. That J. A. Logue, the husband, became indebted to the First National Bank of. Jackson, Miss., in the sum of one hundred thirty-six thousand dollars. (How this indebtedness arose does not appear from the bill, but it is spoken of therein as his shortage to the bank.) That "said complainant (J. A. Logue), being unable to replace said money because of inability to re-sell certain properties which he had acquired, and being desirous of atoning and making full restitution to the full extent of his ability, . . . made a full disclosure to said bank of the amount due said bank, and to all other persons, and then and there offered to deed and turn over to said bank all of the property of every kind and character which he, the said J. A. Logue, then owned or had an interest in; that the said J. A. Logue then and there stated to said directors at said meeting that he also owed other indebtednesses, some of which were not secured, and that he desired to turn all of his said property over to said bank, so that all of his creditors who had security should be paid in proportion of their priority, and that the balance of his said property should be applied to all of his other indebtednesses; and that any balance that then remained should be returned to him, or his wife; that the said directors of the said First National Bank, and the said J. B. Stirling, president of said bank, then and there agreed by and with the said J. A. Logue, complainant, that if he would transfer, assign and convey all of his property to the said J. B. Stirling as trustee, on the express understanding and agreement that said property was to be administered in a businesslike way, so as to net as much as possible, not only for the purpose of satisfying all of the creditors of the said

J. A. Logue, but so as to preserve as much of the equity therein to him as possible.''

That Mrs. Logue also agreed to transfer to Stirling her interest in the property for the same purpose, and that pursuant to this agreement the complainants conveyed the real property owned by them, the value of which is alleged to be six hundred eighty-five thousand dollars on which there were incumbrances to the amount of four hundred seventy-five thousand dollars, to Stirling by straight warranty deeds. That afterwards J. A. Logue also assigned to Stirling, as security for all of the debt due by him, personal property to the value of several thousand dollars. That Stirling now denies that the conveyances were made to him in trust for the benefit of all of J. A. Logue's creditors, and states that he will deal therewith only as security for the debt due by Logue to the bank, accounting to the complainants for any surplus that may remain after the bank had been paid.

That ''complainant, J. A. Logue, will show that this bill is filed by himself and his wife in an honest effort on their part to see that all creditors of J. A. Logue are paid in full, and inasmuch as all of the creditors of J. A. Logue are interested in this suit, and would have a right to participate in the proceeds of all of the said property, complainants charge that it will be necessary for each and all of said creditors to be given an opportunity to enter into this court and propound their claims to said property, to the end that they might be paid in full.

''Complainants will show that the very purpose for which these conveyances and agreements were entered into by complainant J. A. Logue and his wife was in order that he might relieve himself from misdeeds and, so far as he could, make full and complete restitution to everybody, and if J. B. Stirling, defendant herein, and the First National Bank, are allowed and permitted to the exclusion of other persons just as entitled to be paid

as said bank to appropriate all of his assets and apply the same to their personal benefit, and to administer same outside of the jurisdiction of this court, it will be possible for said Stirling and said bank to greatly enrich themselves out of these complainants' property, and to deprive and deny to complainant, J. A. Logue, the privilege of full and complete restitution to all of his creditors; that many of said creditors at this time are threatening to bring suit, and intend to do so in a very short time, and if allowed and permitted to bring such suits the estate will be entirely dissipated, and all the creditors will be irreparably injured and damaged thereby.

"Complainants bring this suit for the benefit and on behalf of all creditors and parties having an interest in said property, whether specifically made defendants herein or not.

"Complainants would further show that the said J. B. Stirling, although he received said conveyances of said property heretofore mentioned or assigned for the benefit of the creditors of the said J. A. Logue, has failed, neglected and refused to carry out said trust by filing petition in this court, or bond as such assignee, or list of creditors, or inventories, as required by the statute, but is asserting an exclusive right to administer said properties and assets exclusively for the benefit of the said bank, and to the exclusion of all other creditors."

A number of Logue's creditors, probably all of them, were made defendants to the bill. The prayer of the bill is for process, for the appointment of a receiver for the property without notice, for the cancellation of the conveyances executed by the complainants to Stirling, for the administration of the property by the receiver for the benefit of all of Logue's creditors, and for the application of the husband's interest in the property to the payment of his debts before the interest of the wife therein is resorted to for that purpose.

It will be observed that no fraud is alleged in the procurement of the conveyances to Stirling, nor any mistake in their execution.

On the filing of this bill a receiver was appointed pursuant to the prayer thereof without notice to any of the defendants therein. The bill was answered only by Stirling and the First National Bank wherein any agreement or understanding relative to the property other than as set forth in the instruments by which the property was conveyed to Stirling is denied, and it was alleged therein that the only agreements entered into between Stirling or the bank and the complainants are such as are set forth in the conveyances from the complainants to Stirling, and in the separate written instrument executed contemporaneously with the deeds to the real property which reads as follows:

"We the undersigned J. A. Logue and Julia Logue his wife have at this day executed certain conveyances to J. B. Stirling reference to them is made for the property hereunder covered, said Stirling shall hold said property with the rights thereover of an absolute owner until there shall have been repaid to First National Bank of Jackson, Mississippi, all amounts that are lawfully due and owing to the said bank by the said J. A. Logue have been fully paid, together with interest thereon and costs of collection. When this shall have been done, then the said Stirling shall reconvey unto the parties executing this instrument that which may remain.

"Executed this January 21st, 1929.

"J. A. Logue,

"Mrs. Julia Casey Logue,

"J. B. Stirling."

It also appears from the answer, and the admitted fact is, that J. A. Logue was an assistant cashier of the First National Bank, and had embezzled the funds of the bank to the amount of one hundred thirty-six thousand dollars,

which he had used in the purchase of his interests in the property conveyed by him to Stirling. The only contro- versy as to the conveyances to Stirling is that Logue claims they were made to Stirling for the benefit of all his creditors, while Stirling and the bank claim that they were made solely for the benefit of the bank. A motion was then made by Stirling and the bank for the discharge of the receiver, on the hearing of which a large amount of testimony was introduced, from which it appears that Logue confessed his embezzlement of the funds of the bank to the appellee Stirling, who is president of the bank, and agreed to transfer all of the property owned by himself and his wife, except the homestead, to Stirling. This agreement was ratified by the wife when she was thereafter informed of it.

According to the evidence of the appellants, the trans- fer of this property to Stirling was to be solely for the purpose of securing to the bank the repayment of the money embezzled from it by J. A. Logue. According to the evidence of the appellees, the transfer to Stirling was to be made as security for the payment of all of J. A. Logue's creditors. After Logue admitted his embezzle- ment to Stirling and agreed to transfer his property to Stirling, he appeared before the bank's board of direc- tors, admitted his embezzlement of the bank's funds, stated that he desired to make restitution thereof, and was willing to turn his property over to the bank for that purpose. The directors preferred that the transfer of the property be made to Stirling, which Logue said was agreeable to him. Logue's evidence on this point is as follows: "It was the understanding with General Stirling until this directors' meeting that there would be some kind of a corporation formed for the purpose of getting the money out of my property for the bank and my other creditors—it was suggested that the conveyances be made to the First National Bank as trustee, and Dr.

Segura got up and says, as General Stirling is President of the bank, this trust can be turned over to him and then the bank will not be mixed up in it. I told him that it was perfectly agreeable to me; that I had all of the confidence in General Stirling that a man could have, and that I would give him the last penny I had, and anything he said do I would do. I says, all I ask for—I don't ask for anything for myself, but if there is anything they could figure out of the revenues—some small amount, to let it go to my wife and children, and that my honest debts be taken care of—that was all I asked of them.''

All of the directors present at the meeting denied that Logue intimated to them in any way that the transfer to Stirling was to be for the benefit of any of his creditors other than the bank. The deeds to Stirling of the real property, and the instrument setting forth that they were made for the purpose of securing the payment of money due by Logue to the bank, were executed contemporaneously the next day after Logue's conference with the bank's board of directors. Two or three days thereafter Logue executed to Stirling transfers of personal property owned by him, they reciting that they were made as security for the bank.

In order to justify the appointment of a receiver for this property, the complainants must make it appear, at least *prima facie,* that they are entitled to the relief prayed for in their bill of complaint. The bill alleges three grounds of complaint: First, that Stirling was violating his agreement to administer the property for the benefit of all of Logue's creditors; second, if allowed to continue to administer the property, it is possible for Stirling and the bank to enrich themselves at the expense of Logue and his other creditors; and, third, that Stirling is not administering the property in accordance with the law governing a general assignment for the benefit of creditors.

It will be observed from the statement of the case hereinbefore made that the main ground of the complainants' cause of action is that prior to, or at most contemporaneously with, the execution of the deeds to Stirling, he verbally agreed to administer the property, not in accordance with the written instruments then executed, but for the benefit of all of Logue's creditors. In the absence of a charge of fraud or mistake, evidence of this oral agreement is inadmissible and cannot be looked to to vary the terms of the written contract, the citation of authority for which would be supererogatory. The deeds to the real property, together with the separate instrument of defeasance, constitute a mortgage of the property for the benefit of the bank; the complainants having the right thereunder at any time they may desire to redeem the property therefrom by the payment of the amount due the bank. Such an instrument is not an assignment within the meaning of section 120, Code of 1906, Hemingway's 1927 Code, section 107, for the benefit of the creditors; one of the essential requirements of such an assignment being that the assignor part with all dominion over the property and charge the assignee with the duty of creating out of it a fund for the payment of his creditors. *Union & Planters' Bank* v. *Allen,* 77 Miss. 442, 27 So. 631; *Pollock* v. *Sykes,* 74 Miss. 700, 21 So. 780; 5 C. J. 1038; Burrill on Assignments (6 Ed.), section 6 *et seq.,* and 87.

The allegation that it is possible for Stirling and the bank to enrich themselves if Stirling is allowed to continue to administer the property presents no valid ground of complaint, in the absence of a concrete allegation of misfeasance on the part of Stirling.

It appears from the oral evidence that an involuntary petition in bankruptcy has been filed against Logue by one of his creditors, and it is said that the conveyance made to Stirling for the benefit of the bank is void as against the trustee in bankruptcy. As to this we are

not called on to express an opinion, for if that fact be conceded the complainants are without interest therein and are without the right to here complain because thereof.

The conveyances to Stirling are valid in so far as the complainants are concerned, and that is all we are here called on to determine. The motion to discharge the receiver should have been sustained.

After the motion to discharge the receiver was overruled, a petition was filed by the receiver requesting permission to lease for one year the two plantations, the possession of which had been transferred to him by Stirling in accordance with the decree appointing the receiver. The prayer of this petition was granted, and the appellants complain thereat. The appeal from the order overruling the motion to discharge the receiver was taken without a *supersedeas*, and consequently it became necessary for the court to authorize the receiver so to deal with the property as to protect the interests of all parties concerned, and we do not understand the appellants to controvert that proposition. One of the things necessary for the receiver to do in order to protect the interests of all parties was to arrange for the farming of the two plantations for the year 1929; consequently it was proper for the court to authorize him to lease the places for that year, and its order so doing must be approved unless it contains some specific stipulations that should not have been embodied therein. The receiver reported to the court that the best offer he could obtain for the lease of the two plantations was from Paul Schauble, who holds a deed of trust on the property.

Schauble offered to make certain expenditures necessary to be then made, to work the plantations for the year 1929, and when the crop was gathered to, first, deduct from the proceeds thereof the expenditures so made by him, to then pay several debts that had been incurred

for the making of the crop prior to the execution of this lease, and to divide the remainder of the proceeds of the crop equally between himself and the receiver. This offer of Schauble's is set forth in the decree of the court by which the receiver was authorized to accept it.

As we understand the contentions of the appellants, they object only to three of the provisions of the order authorizing the lessee to accept Schauble's offer.

Prior to the execution of the deeds by the complainants to Stirling, J. A. Logue had made certain preparations for working the plantations during the year 1929 which he intended to do in the usual way, that is, partly with tenants and partly with laborers and share croppers —all to be under his supervision and control. The tenants had executed rent notes for the land to be worked by them, and these notes were in Stirling's possession; he claiming they had been transferred to him by Logue as security for the First National Bank, which transfer Logue denied. The court ordered Stirling to deliver these rent notes to the lessee Schauble. Whether these notes were included in the transfers of property hereinbefore referred to from Logue to Stirling is immaterial, for if they were included therein the receiver was entitled to the possession thereof under the order directing Stirling to deliver to him all of the property received by Stirling from Logue. If the plantations were to be leased for the year 1929, it was necessary for the lessee to have these rent notes so that the promisors therein might become his subtenants, thereby enabling him to operate the plantations in accordance with the terms of the lease.

The plantations were leased and farmed in the year 1928 by W. E. Jones to whom several of the tenants thereon had executed deeds of trust on live stock owned by them as part of his security for advances made to them for that year. It appears from the evidence that the aggregate of the balances due Jones by these tenants

was about five thousand eight hundred dollars and that the live stock embraced in their deeds of trust to him were worth about four thousand dollars. Should Jones foreclose these deeds of trust, the tenants would be without live stock with which to make their crops in 1929. Schauble agreed, and the court directed him, to pay whatever amount these tenants owed Jones, not to exceed the sum of five thousand eight hundred dollars. This in effect was simply an advance of money by Schauble to the tenants for the purpose of paying their debts to Jones, and as we understand the provision of the decree and lease authorizing and requiring him so to do, he was obligated, in making the advances, to see to it that their repayments are secured by liens on the tenants' live stock and crops. Under the circumstances then confronting the receiver, and the necessity for some arrangement for farming the plantations during the year 1929 to be speedily made, we are not prepared to say that the court erred in permitting the debts due by these tenants to Jones to be paid.

Logue claims to have borrowed five thousand dollars from F. J. Casey and expended it in preparations for working the plantations in 1929, and which is one of the debts he claims was intended to be secured by the transfer of his property to Stirling. The court directed the lessee to pay to the receiver five thousand dollars to be held by him pending the determination of the court whether it should be paid to Casey. No harm resulted to the appellants from this provision of the decree, for when the receiver is discharged it will become his duty to pay this money to Stirling; for any rights that Logue's creditors may have as against Stirling can be adjudicated only when they themselves invoke the court's process therefor.

The decree authorizing the receiver to lease the plantations to Schauble will be affirmed.

828

The decree overruling the motion to discharge the receiver will be reversed, and the cause will be remanded.

*Reversed and remanded.*