BYRD, D.B.A. CREDIT BUREAU OF HATTIESBURG *v.* REES,
D.B.A. CREDIT BUREAU OF HATTIESBURG COLLECTION
SERVICE

No. 43365 February 15, 1965 171 So. 2d 864

*Dudley W. Conner, Edward J. Currie,* Hattiesburg; *Jesse M. Byrd,* Leakesville, for appellant.

*Howard L. Patterson, Jr.,* Hattiesburg, for appellee.

RODGERS, J.

This is an appeal from a final decree of the Chancery Court of Forrest County, Mississippi, permanently enjoining appellant from removing the Credit Bureau of Hattiesburg from its present location now occupied jointly with the Credit Bureau of Hattiesburg Collection Service. This action arose under the following circumstances: In 1926, the appellant, Mrs. Dell Byrd, established and

owned a credit reporting business known as the Credit Bureau of Hattiesburg, Mississippi. Thereafter, in 1957, she established a business known as the Credit Bureau of Hattiesburg Collection Service. These two businesses operated in conjunction as a credit reporting and collection service but separate in management and departmental functions.

The appellee, Mrs. Margaret Rees, was the assistant manager and employee of appellant, and she desired to purchase both businesses. After considerable negotiations, the owner, Mrs. Dell Byrd, entered into a written contract with Margaret Rees and her husband Samernie Rees on October 1, 1960. It was agreed that Mrs. Byrd immediately sold to Mr. and Mrs. Rees the business known as the Credit Bureau of Hattiesburg Collection Service. The contract also provided for the future sale of the Credit Bureau of Hattiesburg upon the retirement or death of appellant. It was agreed that the purchasers would pay the purchase price for the Credit Bureau in installment payments after the purchase price had been completed for the Credit Bureau of Hattiesburg Collection Service. The contract provided that the purchase price for the Credit Bureau was $40,000, to be paid in installments of $100 per month. It was also agreed that Mrs. Byrd was to remain the owner and manager of the Credit Bureau until she retired or died, and she retained title to all physical properties of the business for the security for the payment of the purchase price.

The contract contained the following paragraphs:

"(f)    The business of Credit Bureau of Hattiesburg Collection Service has heretofore been operated by Seller as though it were a part of or a division of her business carried on as Credit Bureau of Hattiesburg; and it is agreed between all parties hereto that Buyers shall so continue to operate the Credit Bureau of

Hattiesburg Collection Service insofar as the general public and the customers and clients of said business are concerned. It is the intention of all parties hereto that the business of Credit Bureau of Hattiesburg Collection Service shall continue uninterrupted just as though there had been no change of ownership and that such operation by the Buyers shall conform in general to the plan of operation heretofore in effect. In the conduct of the business of Credit Bureau of Hattiesburg Collection Service Buyers shall continue to use and occupy the same space in the premises of Credit Bureau of Hattiesburg as heretofore, paying Seller $25.00 per month for the use of such space. Buyers agree that they will not move their said business of Credit Bureau of Hattiesburg Collection Service from the premises of Credit Bureau of Hattiesburg, unless Seller should hereafter grant to them written permission so to do.''

''(i)   All operations of the Credit Bureau of Hattiesburg Collection Service in connection with the Credit Bureau of Hattiesburg reporting service and department shall continue as heretofore with all collection items being made known to and posted on the Credit Bureau of Hattiesburg files.''

''5.   Seller agrees to cooperate with the Buyers and the Buyers agree to cooperate with the Seller in promoting the respective businesses of both; and Buyers especially agree that they will not make any change in the operation of the business of Credit Bureau of Hattiesburg Collection Service, unless such change should be agreed upon in advance with the Seller.

''6.   This agreement sets forth the entire agreement and contract between the parties hereto with respect to the matters and things herein mentioned, and there are no verbal or oral understandings between them not herein set out.''

Appellees filed an original bill in the Chancery Court in which they alleged that they had completed the purchase of the Credit Bureau of Hattiesburg Collection Service, (hereinafter called Collection Service), and had paid $2,300 upon the purchase of the Credit Bureau of Hattiesburg, (hereinafter called Credit Bureau); that through various methods described therein, appellant was attempting to separate the two businesses and that she planned to and would move the Credit Bureau from the present location, unless she was restrained from so doing by the chancery court. A copy of the contract was attached to the original bill and it was alleged that the separation of the two businesses was ''both in spirit and letter a clear and unlawful breach of said contract . . . .''

Appellant answered the original bill, admitted the contract, and admitted that she intended to remove the Credit Bureau away from the present location and charg that the ''contract contained no provisions, terms, stipulations or conditions prohibiting the respondent from moving the Credit Bureau of Hattiesburg . . . .'' to premises other than those now occupied by the Credit Bureau. The respondent offered to repay the appellees if they were dissatisfied with the purchase of the Credit Bureau. She alleges that the conduct of the petitioners made it impossible to remain in the premises now occupied because her health and property interests have been injuriously affected by remaining where the business is now located.

Thus the issues were clearly drawn in the trial court. Complainants claimed that appellant had admitted her intention to sever the two businesses in violation of the contract. Respondent denied that the contract prohibited a severance of the businesses, and charged that the acts of petitioners made it impossible for her to keep the Credit Bureau in the present location.

Over the objection of appellant, appellees were permitted to show that before and since the contract was made, the two businesses were interwoven to such an extent that the Collection Service was actually a working department of the Credit Bureau. This testimony detailed a filing system, telephone system and a working arrangement between appellant and appellee, Mrs. Margaret Rees. The respondent countered by showing that Mr. Samernie Rees cursed and used crude and unrefined language; that he became intoxicated and his conduct was so offensive, it prohibited her from continuing the operation of the Credit Bureau in the same location with appellees, and that the contract did not prohibit the removal of the Credit Bureau.

After hearing all of the testimony, the chancellor reached the conclusion that the two businesses were interwoven and that the contract showed the intent of the parties at the time the contract was made to keep the businesses together. The court held that the conduct of appellee Samernie Rees was regretable but the chancellor did not believe his conduct had reached such proportion as to breach the contract on the part of appellee, making it impossible for the other contracting party to carry out the terms of the contract.

Appellant contends on appeal that the trial court erred in permitting the introduction of parol evidence by appellees to show the intention of the parties at the time the contract was consummated. This objection was based upon the venerable, honored and well-established common-law rule that parol extrinsic evidence is not admissible to add to, subtract from, vary or contradict written instruments, contractual in nature, and which are valid, complete, unambiguous and unaffected by accident, mistake or fraud. We agree with the contention of appellant that this is one of the well-established rules of this State. Taylor v. C. I. T. Corp., 187 Miss. 581, 191 So. 60 (1939); Fornea v. Goodyear

Yellow Pine Co., 181 Miss. 50, 178 So. 914 (1938); Allen v. Allen, 175 Miss. 735, 168 So. 658 (1936); Welch v. Gant, 161 Miss. 867, 138 So. 585 (1932); Jeffery v. Jeffery, 157 Miss. 187, 127 So. 296 (1930); Stirling v. Logue, 154 Miss. 812, 123 So. 825 (1929); Kendrick v. Robertson, 145 Miss. 585, 111 So. 99 (1927); Maas v. Sisters of Mercy of Vicksburg, 135 Miss. 505, 99 So. 468 (1924). We do not agree however that the rule is applicable under the facts here presented.

■■ ■ The rule of parol evidence is subject to many exceptions and is said to be very flexible. Valley Mills, Division of the Merchants Co., Inc. v. Southeastern Hatcheries of Miss., Inc., 245 Miss. 71, 145 So. 2d 698 (1962); Virginia-Carolina Chemical Co. v. Ruffin, 126 Miss. 80, 88 So. 500 (1921); 32A C. J. S. *Evidence* § 929 (1964).

■■ ■ The textwriter in 32A C. J. S. *Evidence* § 930 (1964), in explanation of this rule says at p. 312:

> "The parol evidence rule does not preclude the reception of parol evidence with reference to a matter evidenced by the writing, where such evidence relates to a matter in pais, or is of such a character that it does not tend to vary or contradict the written instrument."

The chancellor was obviously of the opinion that the testimony introduced did not contradict or vary the terms of the contract, and we are of the opinion he was correct.

■■ ■ Upon an examination of this record, we have reached the conclusion that there is another reason why the parol testimony was admissible in the case at bar. Parol evidence of the intention of the parties may be received to clear up an ambiguity by reason of which, such intention is not definitely expressed. It is pointed out by the textwriter in 12 Am. Jur. *Contracts* § 227 (1938) that:

■■ ■ ''Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. Whatever may be the inaccurracy of expression or the inaptness of the words used in an instrument in a legal view, if the intention of the parties can be clearly discovered, the court will give effect to it and construe the words accordingly. It must not be supposed, however, that an attempt is made to ascertain the actual mental processes of the parties to a particular contract. The law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest. It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties and then carry out that intention regardless of whether the instrument contains language sufficient to express it; but their sole duty is to find out what was meant by the language of the instrument. This language must be sufficient, when looked at in the light of such facts as the court is entitled to consider, to sustain whatever effect is given to the instrument. Taking into consideration this limitation, it may be said that the object of all rules of interpretation is to arrive at the intention of the parties as it is expressed in the contract. In other words, the object to be attained in interpreting a contract is to ascertain the meaning and intent of the parties as expressed in the language used.''

■■ ■ In the case of Valley Mills, Division of the Merchants Co., Inc., v. Southeastern Hatcheries of Miss., Inc., *supra*, we pointed out that ''Prof. Jones in his book, Jones on Evidence, 2d Ed., Sec. 453, p. 570, says: 'It is a familiar rule that where the language of the written instrument is ambiguous or indefinite, the practical interpretation of the parties may be proved

and is often entitled to great weight.' '' It has been said, however, that parol testimony is not admissible to vary or modify the terms of the written instrument, even where it is ambiguous, but it is admitted not to add to or detract from the writing, but merely to ascertain the meaning of the parties. See also 32A C. J. S., *Evidence* § 959 (1) (1964).

Turning now to the contract itself, we find the following language:

"It is the intention of all parties hereto that the business of the Credit Bureau of Hattiesburg Collection Service shall continue uninterrupted just as though there had been no change of ownership and that such operation by the Buyer shall conform in general *to the plan of the operation heretofore in effect.*" (Emphasis supplied.)

What then was the "plan of operation heretofore in effect?" The contract itself does not indicate what is meant by "the plan of operation heretofore in effect." We are of the opinion that parol evidence could be introduced to explain the intention of the parties as to what operation had been in effect. Having reached the conclusion that the oral testimony was admissible to explain the "plan of operation heretofore in effect", it becomes apparent that the clause of the contract requiring the buyers to "continue to use and occupy the same space in the premises of Credit Bureau of Hattiesburg as heretofore" obviously means that all parties agreed that both businesses would "continue to use and occupy the same space in the premises as heretofore." In short, they agreed to stay together. Moreover, it is obvious from the testimony, and from the admission of the appellant, that these two businesses are so intermeshed and interwoven that to permit the Credit Bureau of Hattiesburg to sever its direct contact from the Collection Service would very likely destroy this business. We are of the opinion from

the evidence introduced in the case and the wording of the contract that the chancellor was correct in granting a permanent injunction preventing appellant from moving the Credit Bureau of Hattiesburg from its present location. We do not however pass upon the future rights of these two businesses to expand, nor upon situations which may arise in the future which would prevent the essential cooperation of the parties in carrying into effect the terms of the contract.

The decree of the chancery court on the record in this case will be, and is, affirmed.

Affirmed.

*Lee, C. J., and Ethridge, Jones and Patterson, JJ.,* concur.