GILLESPIE, Presiding Justice.
Joseph C. Bancroft filed a bill in chancery against T. B. Wilkins, Edwin C. Wilkins, Dr. Verner S. Holmes and Sydney Franklin for equitable relief. It averred that the complainant and defendants, except Franklin, purchased from F. E. Rogers a parcel of land in McComb City for the sum of $15,000, each paying his pro rata share. It charged that they agreed that title would be placed in the name of T. B. Wilkins in trust for the benefit of himself and the others as tenants in common, and that title was in fact taken in T. B. Wilkins’ name although the purchase price was paid by all four as agreed. The bill also stated that T. B. Wilkins later sold the property to defendant Franklin and that Wilkins would not acr count to complainant for the proceeds received. Complainant further averred that Franklin was not an innocent purchaser. The bill prayed for an adjudication that complainant was the owner of an undivided one-fourth interest in the property, or for an accounting of all sums received by T. B. Wilkins from the sale of the property.
The trial court found that there was a joint venture between the parties for the purchase of the property; that T. B. Wilkins held title in trust for the mutual benefit of himself, Dr. Holmes and Bancroft; and that T. B. Wilkins had sold the property for $40,000 to Franklin, an innocent purchaser. Judgment was entered in favor of Bancroft against T. B. Wilkins for Bancroft’s share of the proceeds from the sale, plus certain expenses paid by Bancroft. T. B. Wilkins prosecuted an appeal to this Court.
The testimony on the material factual issues is in direct conflict, and the chancellor resolved the conflicts in favor of Bancroft, the appellee. In so doing, he relied upon the testimony of Dr. Verner S. Holmes, who was named a defendant but against whom no relief was granted. It would serve no useful purpose to discuss the evidence pro and con.
The chancellor was not manifestly wrong in his findings. We state the facts in the light most favorable to Bancroft, in whose favor the chancellor resolved the conflicts in the evidence.
Prior to the transaction involved in this case, Bancroft, the two Wilkins, and Dr. Holmes engaged in several joint ventures in purchasing oil properties. Each party participated in those ventures to the extent of a one-fourth interest. The oil ventures were discussed at meetings held in Bancroft’s home. During the latter part of 1959 Bancroft observed the Rogers property that is involved in this case, and thereafter had a friend inquire of the owner whether it was for sale. At one of the meetings in Bancroft’s home, attended by the two Wilkins, Dr. Holmes and Bancroft, a recommendation was made by Bancroft that the group purchase the Rogers property for the purpose of building an apartment house. They discussed the forming of a corporation to be named Delaware Realty Corporation (the property was on Delaware.Avenue), and a name for the apartment house. T. B. Wilkins told the group that he knew Rogers personally and would talk to him about the purchase of the property. The group then authorized T. B. Wilkins to purchase the land in his name as trustee for the group. T. B. Wilkins purchased the property from Rogers on December 7, 1959, for $15,000, and took title in the name of T. B. Wilkins.
On December 15, 1959, Bancroft gave T. B. Wilkins a check for $3750, which was one-fourth of the purchase price of the *573 Rogers property. T. B. Wilkins cashed the check. Dr. Holmes had previously paid T. B. Wilkins the sum of $3750.
On December 22, 1959, Edwin L. Wilkins wrote a letter addressed to Bancroft, Dr. Holmes and T. B. Wilkins jointly, in which he advised the addressees that the Rogers property on Delaware Avenue had been purchased for $15,000 and that “this property is being held in the name of Mr. T. B. Wilkins at this time pending our decision as to proper placement at a later date.” The letter stated also that “your proportionate part of this purchase being $3,750.00 (an undivided one fourth).” All parties received this letter. T. B. Wilkins admitted receiving it and never disavowed the statements contained therein.
Prior to the purchase of the property, Bancroft conferred with architects with reference to the proposed apartment building, and tentative plans were drawn up. These plans were discussed with T. B. Wilkins, Edwin L. Wilkins and Dr. Holmes. In March 1960 these plans were revised, and the plans as revised were discussed by the group. In February 1960 Bancroft acted for the group in securing a charter of incorporation for the Delaware Realty Corporation.
T. B. Wilkins had the property assessed to himself, insured it in his own name, paid the taxes thereon, and had it surveyed.
On July 6, 1960, T. B. Wilkins gave an option on the property, and on September 7, 1960, sold it to Sydney Franklin for $40,000. On September 15, 1960, T. B. Wilkins issued a check to Dr. Holmes for $4,143.75 and a check to Bancroft in the same amount, which was $3,750 plus 6% interest from the date T. B. Wilkins received the sums from Dr. Holmes and Bancroft. On December 1, 1960, T. B. Wilkins sent Dr. Holmes another check for $5,767.05, which, together with the first check, equaled one-fourth of the sale price of the property less one-fourth of certain expenses incurred by T. B. Wilkins. Edwin L. Wilkins and T. B. Wilkins both testified that Edwin L. Wilkins did not put up his one-fourth of the purchase price and did not participate in the venture. Bancroft returned the check for $4,143.75 to T. B. Wilkins and filed this suit.
The first assignment of error is that the demurrer of T. B. Wilkins should have been sustained because the bill of complaint did not specifically charge that a resulting trust arose. We are of the opinion that the bill of complaint was sufficient and that the demurrer was properly overruled.
The next assignment of error involves Bancroft’s and Dr. Holmes’ testimony explaining why Bancroft wrote on the margin of the check to T. B. Wilkins for $3,750, dated December 15, 1959, the following: “Loan on (4 int. prop, located at NE corner Delaware & 6th 200 x 125 ft.” T. B. Wilkins’ defense is that the check represented a loan to him by Bancroft. Wilkins testified that he bought the property and offered Bancroft a share of the deal, but that Bancroft declined to enter the transaction and instead offered to lend him one-fourth of the purchase price. Bancroft testified over obj ection that he placed the notation on the check to save income taxes; that it was legitimate to identify his one-fourth of the purchase price as a loan to the corporation to be organized by the participating parties. Dr. Holmes testified also that Bancroft had suggested that Dr. Holmes handle his part of the purchase price in the same manner.
T. B. Wilkins contends that the admission of the testimony of Bancroft and Dr. Holmes in explanation of notation on Bancroft’s check violated the rule that parol evidence is inadmissible to add to, subtract from, vary or contradict written instruments. We are of the opinion that the chancellor was not in-error in admitting the testimony in question. The notation on the check was not a contract. It was an item of evidence that tended to impeach Bancroft. Standing alone and unexplained, the notation on Bancroft’s check was ambiguous.
*574 The testimony of Bancroft and Dr. Holmes explained why Bancroft placed the notation on the check. In the early case of Peacher v. Strauss, 47 Miss. 353 (1872), this Court said that parol evidence may explain but not contradict written language. The testimony of Bancroft and Dr. Holmes ;did not contradict the written notation on Bancroft’s check. The notation was incomplete and informal, and under the circumstances of this case, the application of the parol evidence rule would be “unreasonably rigid and harsh.” Valley Mills et al. v. Southeastern Hatcheries, 245 Miss. 71, 145 So.2d 698 (1962). We held in the recent case of Byrd v. Rees, 251 Miss. 876, 171 So.2d 864 (1965), that the parol evidence rule is subject to many exceptions, is very flexible, and does not preclude reception of evidence that does not tend to vary or contradict the written instrument. Aaronson v. McGowan, 181 Miss. 642, 180 So. 738 (1938), is not controlling. That case involved a notation on a check stating how the payment was to be applied. The court held that the payor had the right to direct the application of the payment and that his notation as to how it was to be applied became a complete contract when the payee endorsed the check. The parol evidence rule was applied so as to preclude oral evidence to contradict the notation on the check. In the case at bar the notation on the check is not a complete contract. It is only one item of evidence in a complex state of facts.
It is contended also that the chancellor erred in allowing Bancroft to testify as to why he referred to T. B. Wilkins as the owner of the property in a letter he wrote to Dr. Holmes on February 2,1960. The letter had reference to a proposed loan from the Federal Housing Administration, and in it Bancroft was advising T. B. Wilkins, Edwin L. Wilkins and Dr. Holmes of the results of a meeting with the architects and of the pending organization of a corporation to be known as Delaware Realty Corporation. The letter proposed that a letter be secured from T. B. Wilkins, referred to as the owner of the property, to be attached to the F.H.A. loan papers. This letter was not in derogation of the title Bancroft claimed in the property. T. B. Wilkins was the owner of the property — the record owner of the property for the benefit of the group. The letter was not contractual in nature, and the testimony of Bancroft did not vary the terms of the letter, but merely explained why it was written. There was no error in the admission of parol testimony concerning the letter.
We have considered carefully all the contentions of T. B. Wilkins, and we find no reversible error. The chancellor’s findings are amply supported by the evidence. We are of the opinion that the case should be, and it is, affirmed.
Affirmed.
RODGERS, PATTERSON, INZER and ROBERTSON, JJ., concur.