## CALHOUN COUNTY, FLA., v. ROBERTS.

## ROBERTS v. CALHOUN COUNTY, FLA.
### No. 11243.

Circuit Court of Appeals, Fifth Circuit.
April 21, 1945.

See, also, 137 F.2d 130.

Julius F. Parker and Leo L. Foster, both of Tallahassee, Fla., and Marion B. Knight, of Blountstown, Fla., for appellant Calhoun County, Fla.

John W. Bull and Luther W. Cobbey, both of Tampa, Fla., for appellee Charles E. Roberts, as receiver of Allied Engineering Corporation.

George Earl Hoffman, U. S. Atty., of Pensacola, Fla., for United States.

Edw. McCarthy, Jr., of Jacksonville, Fla., for Atlantic Nat. Bank of Jacksonville.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This case is before us on appeal for the second time. The facts which culminated in the litigation are fully set forth in our prior opinion, reported in 136 F.2d 59, 64, and those relevant to this appeal may be briefly summarized.

In December of 1934, Calhoun County, Florida, appellant, entered into a written contract with Allied Engineering Corporation under which the latter agreed to perform the engineering services necessary for the construction of a bridge which the former, by Chapter 16344, Laws of Florida, Sp. Acts of 1933, was authorized to build across the Apalachicola River between Calhoun and Liberty Counties, Florida, with the proceeds of bonds to be issued by the County under the authority of said Act. For its services the Engineering Corporation was to receive 10% of the cost of the bridge, payable during the progress of the work in stipulated sums, and additional payments for extra services. The P. W. A. subsequently agreed to purchase the bridge bonds, in the sum of $563,000, and to make the County a grant of $399,273 to supplement the bond funds to pay construction costs, but stipulated that the engineering fee should not exceed 7½% of the cost of the bridge.

The Engineering Corporation served the County until the completion and acceptance of the bridge, accepting during the period of construction payment on the basis of

7½% of cost price. Following acceptance of the bridge, the Engineering Corporation, through its receiver, brought this suit against the County to recover $35,232.36, the balance alleged to be due to it including extras, and to restrain the payment out of the surplus of $23,726.49 remaining in the Construction Fund Account on deposit in a Jacksonville bank, asking that said surplus "be sequestered and subjected to the payment of said judgment." The trial court gave a general judgment against the County, but held that the moneys in the bank were trust funds usable solely in payment of principal and interest on the bonds. On appeal, we held that under the legislative act no general obligation against the County was authorized and the bridge was to be "financed and operated as a self-liquidating project, until such time as the same may be taken over by some State or Governmental agency to be operated as a free bridge, 'provided satisfactory arrangement is made relative to any unpaid balance on the debt incurred hereunder.'" We then said:

"We are unable to ascertain from the record whether this deposit[1] was derived from the grant or from the bond issue. If from the latter, it would appear that the engineering corporation, unless estopped, might be entitled to have any residue from the proceeds of the bond issue applied to its indebtedness. This would not be true as to any residue from grant money that may be on deposit, since the P. W. A. had a clear right to impose the condition that engineering fees should not exceed seven and one-half per cent. to be paid out of grant money.

"We hold that the Court below was in error in rendering a general judgment against the County, and the entire judgment of the lower Court is reversed and vacated, without prejudice to the right of the appellee herein to apply to the Court below * * * within sixty days from the coming down of the mandate, for further inquiry to determine whether or not a portion of this deposit in the Atlantic National Bank of Jacksonville was derived from the proceeds of the bond issue, and, if so, whether such proceeds are subject to being applied toward the payment of the indebtedness found by the Court below to be due appellee."

On remand, the parties stipulated that grant funds and bond funds were deposited to the credit of the Construction Fund Account in the Atlantic National Bank of Jacksonville, Florida, as follows:

| Requisition | Date of Payment | Amount |
|---|---|---|
| Grant | Jan. 5, 1937 | $ 34,000.00 |
| Grant | May 18, 1937 | 187,818.25 |
| 1st Loan | Nov. 3, 1937 | 488,000.00 |
| 2nd and Final Loan | June 1, 1938 | 75,000.00 |
| Grant | June 8, 1938 | 88,727.30 |
| Final Grant | Jan. 24, 1939 | 50,000.00 |
| Supplemental Final Grant | Feb. 24, 1939 | 38,727.45 |
| Total Loan and Grant Payments | | $962,273.00 |

of which $563,000 (58½%) was derived from the sale of bonds, and $399,273 (41½%) from grants of the United States Government.

It was also stipulated that the lowest balance of the Construction Fund Account was $5,449.93 on January 3, 1939, and that the account now contains $23,711.85. Upon the stipulation and other evidentiary matters, the court below held that the Engineering Corporation had not estopped itself to have the portion of the balance in the Construction Fund Account that consisted of bond proceeds applied to its indebtedness, and that the County's interest in the balance remaining in the commingled fund was 58½% thereof, or $13,871.43. The bank was directed to pay said sum to the plaintiff out of the Construction Fund Account. In reaching said result, the court below proceeded on the theory that this was an active running account derived from two sources which were commingled and deposited without reference to source; and that the Engineering Corporation, being the only remaining claimant to funds derived from the bond sale, was entitled to such proportionate part of the fund remaining as the total of bond funds deposited bore to the total funds deposited in said account.

The main question before us, therefore, is whether the court below, acting within the limits laid down in our former opinion, 136 F.2d 59, properly found the sum of $13,871.43 to be the share of bond funds in the $23,711.85 remaining on deposit.

▉ We made it clear in our former opinion that the condition imposed by the P. W. A., that engineering fees should not exceed 7½% of the cost of the bridge, was

---

[1] Referring to the surplus remaining in the Construction Fund Account on deposit in the Jacksonville bank.

a condition which it had a right to make; that said condition must be carried out; and that, as a consequence, no part of the grant money could be used to pay appellee's claim. Under the stipulated facts, there was in the Construction Fund Account on January 3, 1939, $5,449.93. All moneys deposited after that date were grant funds. On January 3, 1939, there had been deposited in the account a total of $873,545.-55, made up of $563,000 from bond sales and $310,545.55 from grants, or 64.45 per cent and 35.55 per cent respectively. Sixty-four and forty-five one hundredths per cent of $5,449.93 is $3,512.48, and represents the pro rata amount of bond funds in the bank on January 3, 1939, and thereafter; the total amount of grant funds on deposit on January 3, 1939, was 35.55 per cent of $5,-449.93, or $1,937.45. Two deposits of grant funds were made thereafter, totaling $88,-727.45. The total bond and grant funds in the bank on, and placed therein after, January 3, 1939, was $94,177.38, of which $3,-512.48 came from bonds and $90,664.90 came from grants. Thus the bond funds aggregated 3.73 per cent, and the grant funds 96.27 per cent of the whole. The $23,711.85 remaining in the bank, therefore, represents 3.73 per cent of bond funds and 96.27 per cent of grant funds. The amount of bond funds included in the $23,-711.85 is 3.73 per cent of said amount, or the sum of $884.45, which is the amount that the court below should have directed paid to the plaintiff by the Atlantic National Bank of Jacksonville out of the Construction Fund Account.

Appellee on cross-appeal urges that the court below erred (1) in denying his motion for the payment of the sum of $3,819 from the Construction Fund Account, for extra services rendered by the Engineering Corporation, and (2) in denying his motion for an amendment of his bill of complaint by which he made the members of the State Road Department parties defendant, and prayed for relief with reference to the lease of said bridge by the County to the State Road Department.

■ It appears from the record that extra work was done by the Engineering Corporation in a manner satisfactory to the Board of County Commissioners of Calhoun County; that said Board by resolution ratified and approved for payment the sum of $3,819 for said extra services; and that the P. W. A. by letter addressed to the Chairman of the Board of County Commissioners recognized said sum as just and subject to payment as being over and above the limitation of 7½% for regular engineering services. Appellee urges that upon this evidence it was entitled to a judgment in its favor ordering said amount paid out of the funds in said Construction Fund Account. The record, however, shows that the P. W. A., in the letter referred to, expressed itself willing to approve the payment of Construction funds to the Engineering Corporation in an amount not to exceed the sum of $3,819 for extra services provided that this claim of the Engineering Corporation was substantiated in a detailed statement of actual additional expenses entailed, which could be verified by an audit to be made by it, such statement to be presented to its office not later than July 8, 1940. Strange to say, the condition thus fixed by the P. W. A. for payment of the sum of $3,819 for extra services was never met. No detailed statement of actual additional expenses entailed was ever presented to the P. W. A. We think, therefore, that the court below was correct in denying plaintiff's motion for an order for the payment of said sum.

■ The motion of the Receiver to amend his complaint by adding the members of the State Road Department as defendants and praying for cancellation of the lease to the State, so that his claim against the County could be paid from bridge tolls,[2] was also denied by the trial court. This relief was clearly an afterthought on the part of the Receiver and

---

[2] Section 8 of the Act provides that the bridge and approaches were "to be financed and operated as a self liquidating project, until such time as the same may be taken over by some State or Governmental agency to be operated as a free bridge, provided satisfactory arrangement is made relative to any unpaid balance on the debt incurred hereunder," and that "upon the bridge and approaches being fully paid for as a self liquidating proposition, or project, then such bridge and approaches shall be turned over to the proper State, or Governmental agency, to be operated as a free bridge." Appellee by his amendment purposed to cancel the lease of the bridge to the State Road Department so that it could be operated as a toll bridge for such time as was necessary to pay his claim in full.

called into being an issue entirely foreign to the suit, and, under Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, its disallowance was within the discretion of the trial court and, no abuse being shown, may not be disturbed on appeal.

The judgment appealed from is reversed, and the cause is remanded with instructions to the trial court to enter a judgment in favor of the Receiver of the Allied Engineering Corporation, plaintiff below, and against Calhoun County, defendant below, in the sum of $884.45 to be paid out of the Calhoun County Construction Fund Account in the Atlantic National Bank of Jacksonville, Florida; and directing the said bank to pay to said Receiver the sum of $884.45 from said Construction Fund Account upon delivery of a proper voucher.

Reversed and remanded.