## BORO HALL CORPORATION v. GENERAL MOTORS CORPORATION et al.

### No. 26, Docket 20664.

Circuit Court of Appeals, Second Circuit.

Dec. 5, 1947.

Harry J. McDermott, of Brooklyn, N. Y., for plaintiff.

John Thomas Smith, of New York City (Edward B. Wallace and Gordon H. Brown, both of New York City, of counsel), for defendants.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. *The first cause of action, i. e., breach of contract:*

We agree with the trial judge that the provision of the contract that there were "no oral or other agreements or understandings," precluded consideration of any evidence as to any extrinsic agreement. But it did not bar reception of evidence *dehors* the written agreement, to show what the parties meant by the following words of that agreement: "Grant of Selling Privilege and Territory: (1) Seller hereby grants to Dealer the franchise to sell new Chevrolet motor vehicles, chassis, parts and accessories in the following described territory, and further agrees to sell Dealer new Chevrolet motor vehicles and chassis hereinafter described in price list by models and body types at

the prices shown in the current price list issued by Seller from time to time, subject to the terms hereof, for resale in the following specified territory (but not elsewhere), namely: Non-exclusive selling agreement in the territory known as New York Zone."[1]

We need not here decide whether extrinsic evidence is admissible to show a mutual intent to give contractual language, plain on its face, an unusual meaning. For certainly the meaning of the words we have quoted is not so clear as to be self-evident.[2] Plaintiff was therefore entitled to a trial at which it might offer evidence—including the testimony of its own officers and of defendant's officers or other employees—in aid of an interpretation imposing an obligation which defendant's conduct breached.

 Even if some statements in plaintiff's letters, written *after* the alleged breach may be read as admissions as to the parties' intention concerning the contract's construction, they are, at most, but evidence to be weighed together with other evidence; they could not automatically operate to waive, or release, or otherwise bar, plaintiff's claim, if one then already existed. Defendant's right to cancel the contract on three months' notice is irrelevant; for defendant never gave such a notice; nor does it appear that the conduct which plaintiff assigns as a breach was intended by defendant as a cancellation. Accordingly, there was a triable issue of fact, involving questions of credibility, with respect to the cause of action for breach of the contract, and summary judgment to that extent was improper.[3] To avoid misunderstanding, we add the following: On January 2, 1940, the parties made a new contract; that contract must be read in the light of the fact that theretofore plaintiff's zone had been reduced; consequently, the alleged breach relates solely to the period from about August 1, 1939, to January 2, 1940.

*2. The second cause of action, i. e., estoppel:*

 The estoppel claim is grounded upon alleged promises made, and acts of reliance done, in 1935 and 1936, before the making of the written contracts of 1937, 1938 and 1939, each of which included the "no other agreements or understandings" clause. Here that clause bites, and decisively. For proof of the estoppel would be proof of an understanding at odds with the integrating instrument, not an aid to its meaning. There was, therefore, no triable issue of fact on this cause of action,

---

[1] The contract also provided that the Dealer was not to sell motor vehicles or chassis outside "the aforementioned territory"; that an "annual estimate" was to be furnished in advance by the Dealer showing its requirements "by months for the calendar year"; that a "three-months' estimate of requirements" was to be furnished by the Dealer every thirty days for each of the three following months; and that a "ten-day report" was to be furnished by the Dealer showing retail sales of both new and used cars made during said period, new and used car stocks, and unfilled orders then on hand.

[2] The issues in Boro Hall Corporation v. General Motors Corporation, 2 Cir., 124 F.2d 822; Id., 2 Cir., 130 F.2d 196, were wholly different; nothing there said is res judicata here.

[3] See Arnstein v. Porter, 2 Cir., 154 F.2d 464; Madeirense Do-Brasil S/A v. Stulman-Emrick Lumber Co., 2 Cir., 147 F.2d 399; Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135; Avrick v. Rochmont Elev. Co., 10 Cir., 155 F.2d 568, 571, 573; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 790; Dixon v. American Tel. & Tel. Co., 2 Cir., 159 F.2d 863, 864; Krug v. Santa Fe Pac. R. Co., 81 U.S. App.D.C. 288, 158 F.2d 317, 320.

Cf. Pound, Appellate Procedure in Civil Cases (1941) 29: "All manner of expedients have been resorted to in different systems of procedure in order to arrive at a written settlement of the facts not dependent on the credit to be accorded witnesses or the impression they may make on the particular trial court. These expedients in varying forms are intended to sift out the crucial fact or facts by a series of averments and admissions or interrogatories addressed to the respective parties. But experience has shown we cannot be sure that in getting a clear-cut statement of facts in advance in this way, to which the law may be applied, we are not cutting out too much, so in the end to be trying an artificial case instead of the real controversy."

and the summary judgment with respect thereto was correct.

Reversed and remanded as to the first cause of action; affirmed as to the second.