VALLEY MILLS, DIVISION OF MERCHANTS COMPANY, INC. *v.* SOUTHEASTERN HATCHERIES OF MISSISSIPPI, INC.

No. 42403          October 15, 1962          145 So. 2d 698

*Brunini, Everett, Grantham & Quin, Harry R. Allen,* Vicksburg, for appellant.

*Roy N. Lee, O. B. Triplett, Jr.,* Forest, for appellee.

RODGERS, J.

Appellant, Valley Mills, brought suit in the Circuit Court of Scott County, Mississippi, against appellee, Southeastern Hatcheries of Mississippi, Inc., for an account alleged to be due and unpaid for eggs sold to the appellee under the terms of a written contract. Appellee pled that it had paid the account, after having deducted a set-off, alleged in a special plea to have been due them by appellant for "baby chicks" purchased. Appellant denied the validity of the set-off upon the ground that the "baby chicks" were not purchased by them but were purchased by certain "flockowners" who were financed by Southeastern Hatcheries, as set out in the terms of a written memorandum-contract between appellee and appellant. The trial judge denied an application for a separate hearing in a special plea. The case was then tried upon its merits before a jury which resulted in a verdict and judgment in favor of appellee.

Valley Mills has appealed to this Court and complains that the trial court committed reversible error in permitting parol testimony to be presented to the jury upon the set-off claimed by appellee in a special plea, and that Valley Mills should have been granted a directed verdict.

This lawsuit is the result of a misunderstanding between the parties with reference to who should have been charged with a shipment of "baby chicks" delivered by Southeastern Hatcheries to individuals in New Roads, Louisiana. Appellee claims that it sold the birds to Valley Mills with an understanding that the chickens would be paid for out of the purchase money for eggs they agreed to purchase from Valley Mills. Appellant, on the other hand, claims that Southeastern Hatcheries sold the shipment of chickens to "flock-owners" in Louisiana, and should look to them for payment.

Testimony introduced in the lower court reveals that Valley Mills is now, and has been for many years, engaged in the manufacture of chicken feed. In order to obtain an outlet or sale for its product, appellant has owned, and has financed others in owning, flocks of chickens. The eggs produced by these flocks were sold to hatcheries, and from the proceeds, the feed account and the purchase price of the birds were paid. The testimony in some respects was conflicting, but since the jury returned a verdict for defendant, it must have believed it favorable to them, from which it appears that sometime before the transaction here involved, appellant, Valley Mills, had purchased other flocks of chickens from Southeastern Hatcheries and appellant had sold eggs to appellee. Southeastern Hatcheries is engaged in the business of hatching chickens for the purpose of growing pullets, cockerels and hens for the market. In the Fall of 1957, before the parties entered into the written contract hereinafter quoted, one Lanis Yarbrough, a salesman for appellant, wanted to find an outlet for surplus hatching eggs because at that time Valley Mills ''had some flocks in production in and near New Roads, Louisiana.'' He made a trip to see Mr. McAuliffe, Manager of Southeastern Hatcheries, for the purpose of discussing the possibility of selling them hatching eggs. Afterwards, he also discussed the matter with A. E. Welbourne, Sales Manager, who ordered a shipment of chickens to be delivered to New Roads, Louisiana. This shipment was charged to Valley Mills on the books of Southeastern Hatcheries November 4, 1957, a copy of the invoice showing the charge being sent to Valley Mills.

The parties then entered into the following written memorandum:

"December 6, 1957

"Mr. R. A. McAuliffe, Jr., Mgr.
"Southeastern Hatcheries Inc.
"Morton, Mississippi

"Dear Mr. McAuliffe:

"This letter will confirm our understanding of an egg marketing arrangement between Valley Mills of Vicksburg, Miss., and Southeastern Hatchery of Morton, Miss., on hatching eggs produced in the New Roads, (La.) area. "This egg marketing arrangement will apply to Valley Mills fed and financed flocks now in production and similar flocks to be blood-tested for production in December 1957 as well as for flocks now being placed and which will be blood-tested on or before September 15, 1958.

"It is our understanding that Valley Mills will sell and Southeastern Hatchery will purchase all hatching eggs during the normal production period of each of the above flocks subject to the following terms:

"PRICE

(a) The published North Georgia hatching egg price f.o.b. New Roads (for the first week in each month) shall be the price per dozen for all eggs received during that month except that a minimum of 65¢ per dozen of eggs shall apply on any published prices below 65¢.

"Payments

(a) All eggs to be paid for (except as noted below) by the hatchery within 7 days from receipt of eggs. Payment to be direct to Valley Mills for proper distribution to each of its contracted producers.

(b)    Payment for eggs shall be made in full by the hatchery in all cases except *where pullet chicks financed by the hatchery remain unpaid on the producers account with the hatchery.* On such egg purchasers the hatchery shall withhold *and credit the flockowner's account* at the rate of 5¢ per dozen (so long as there remains an unpaid balance) on the eggs received from each flockowner *so financed* and remit the balance for such eggs to Valley Mills.

(c)    Hatchery further agrees in addition to prices specified above to pay directly to Wagley Feed Mill of New Roads a fee of $1.00 per case for assembling and storing eggs and will transport them at the hatchery's expense and risk from the above designated collecting point.

''If this letter confirms your understanding of the terms as discussed, would you kindly acknowledge by signing the enclosed carbon copy and return it for our files.

> ''Very truly yours,
> ''Valley Mills
> ''A. E. Welbourne
> ''Sales Manager

''cc: E. C. Harriss
    M. H. Schroll
    Lanis Yarbrough

''This is to acknowledge our understanding and agreement to the terms as outlined above:

> ''SOUTHEASTERN HATCHERY
> ''BY    R. A. McAuliffe, Jr./S/
> ''TITLE    Manager''
> (Emphasis Supplied.)

Appellant objected to the introduction of testimony on the trial of the case upon the ground that parol testimony was inadmissible to vary, change or contradict the terms of the written contract. It is argued on appeal that the part of the memorandum contract, supra, contained in "Payments (a)" and "(b)", particularly the words italicized in the above-quoted letter to Mr. McAuliffe, Jr., prevented the introduction of parol evidence tending to show that Southeastern Hatcheries sold "baby chicks" to Valley Mills. It is insisted that the expression "Where pullet chicks financed by the hatchery remain unpaid on the producers account with the hatchery" and the words "the flockowner's account", and "each flockowner so financed", mean, in effect, that the defendant Southeastern Hatcheries extended credit to the "flockowners" and not to Valley Mills.

Appellee, on the other hand, contends that the testimony was properly admitted because the memorandum-contract is not complete, is ambiguous, and the words and expressions objected to by appellant are not contractual, but identify persons and things and may be explained by parol testimony. It is apparent from the contract itself that it was the result of a conversation for the purpose of selling eggs, or making "an egg marketing arrangement." It is not a contract to sell "baby chicks." It is also apparent from the second paragraph of the memorandum-contract (letter) that the "flocks" had been previously established and were "now in production" and others would be established for production in December 1957. No price was mentioned in the memorandum-contract for the sale of the "baby chicks", but an arrangement was made to provide for the method of paying for them out of the money due Valley Mills for eggs purchased by appellee. Moreover, the second paragraph of the memorandum-contract provides that the contract "will apply to Valley Mills fed and financed

flocks now in production and similar flocks to be blood-tested for production in December as well as for flocks now being placed * * *''. This part of the contract would indicate that all flocks placed before September 1957 would be considered ''similar'' to Valley Mills ''fed and financed'' flocks then in production.

■■ ■ We have come to the conclusion that the memorandum-contract between the parties, above set out, is ambiguous, and the trial court was correct in overruling appellant's objection, and permitting the introduction of testimony to explain its terms, for the reasons hereinafter mentioned:

The rule of evidence invoked by appellant in the trial court is expressed by one textwriter in the following language: ''It is a general rule that parol or extrinsic evidence is not admissible to add to, subtract from, very, or contradict * * * written instruments which * * * are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake.'' 32 C. J. S., Evidence, Sec. 851, p. 784.

This Court has consistently followed the parol evidence rule when it has been applicable to the facts shown in a particular case on appeal to this Court. See 32 C. J. S., Evidence, Sec. 901, Note 24, p. 821; Credit Industrial Company v. Adams County Lbr. & Sup. Company, et al., 215 Miss. 282, 60 So. 2d 791; Pole Stock Lbr. Company v. Oakdale, 54 So. 596 (Miss.); Edrington, et al. v. Stephens, 148 Miss. 583, 114 So. 387; Jeffery v. Jeffery, 157 Miss. 187, 127 So. 296; Divelbiss v. Jones, 164 Miss. 111, 144 So. 464.

■■ ■ It has been said that there is no better settled rule of evidence than that which declares that parol testimony is inadmissible to contradict, or substantially change, the legal import of a written agreement. However, there are numerous exceptions to this rule. If the rule were strictly applied to writings which are in-

complete, informal or transitory in their character, it might be deemed unreasonably rigid and harsh. It is obvious from the statement of the rule itself that the testimony sought to be excluded must vary, contradict, or in some manner change the legal import of the writing. Therefore testimony which does not add to, contradict, vary or change the legal import of a contract is admissible where it is offered to explain or assist in construing the document. See 20 Am. Jur., Evidence, Sec. 1153, p. 1006; Hartsell v. Myers, 57 Miss. 135; Carter, et al. v. Collins, 151 Miss. 1, 117 So. 336.

M. H. Schroll, witness for appellant, made an effort to define the terms of the contract, "Valley Mills fed and financed flocks" and "contract producers", to mean feed, furnished the flocks by Valley Mills on credit of the producers who had purchased flocks from Southeastern Hatcheries. The second paragraph of the memorandum-contract appears to be contractual in its nature, and defines the object to which the terms of the contract were to apply. The terms of the contract are not clear. It does not adequately set out who owes for the "baby chicks".

Prof. Jones in his book, Jones on Evidence, 2d Ed., Sec. 453, p. 570, says: "It is a familiar rule that where the language of the written instrument is ambiguous or indefinite, the practical interpretation of the parties may be proved and is often entitled to great weight." He also says at p. 569, Sec. 452, in the same volume, that: "If the language of the instrument be alike applicable to each of several persons, parcels of land, species of goods, monuments, boundaries, writings or circumstances, or if the terms be vague and general or have divers meanings, parol evidence will always be admissible of any extrinsic circumstances tending to show what person or persons or what things were intended by the party, or to ascertain his meaning in any other

respect.'' See subsequent text, to the same effect, 20 Am. Jur., Evidence, Sec. 1147, p. 999, Sec. 1160, p. 1014. Cf. Kerl v. Smith, 96 Miss. 827, 51 So. 3; Ladnier v. Ingram Day Lbr. Company, 135 Miss. 632, 100 So. 369; Edrington, et al. v. Stephens, supra; Traders' Insurance Company of Chicago v. Edwards Post No. 22 Grand Army of the Republic, 86 Miss. 135, 38 So. 779; Hadad v. Booth, et al., 225 Miss. 63, 82 So. 2d 639.

Prof. Jones points out in his book, Jones on Evidence, 2d Ed., Sec. 439, at p. 552, that another exception to the parol evidence rule, which is pertinent under the facts in this case, is namely: The general rule under discussion is not violated by allowing parol evidence to be given of a distinct, valid, contemporaneous agreement between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement. See also 20 Am. Jur., Evidence, Sec. 1140, p. 992; Jones on Evidence, 5th Ed., Sec. 471, p. 901; Langenback v. Mays, 205 Ga. 706, 54 S. E. 2d 410; 11 A. L. R. 2d, pp. 1221, 1250; Anno. 70 A. L. R. 752; Restatement of the Law of Contracts, Vol. 1, Sec. 240, p. 335.

Turning again to the memorandum-contract, we find that ''(b)'' under ''Payments'' refers to ''pullet chickens financed by the hatchery.'' The testimony, on the other hand, shows that a large part of the shipment of ''baby chicks'' to New Roads, Louisiana, and which were charged to Valley Mills before the date of the memorandum-contract, was for ''Vantress' cockerels. The wording and terms of the memorandum-contract (letter) would not, therefore, prevent the introduction of evidence to show a contemporaneous sale of cockerels to Valley Mills.

It will also be observed from the last paragraph of the memorandum-contract that it was drawn up as the result of a previous discussion. When previous

dealings are reduced to writing which is ambiguous, or there is an independent collateral verbal contract, and the writing shows it to be the result of a discussion, the discussion leading up to the writing may be shown by parol. This is a method of determining the intent of the parties. It is expressed by one textwriter in the following language: ''Where parties contract with reference to the provisions of previous dealings, the terms of such dealings may be shown in evidence in order to arrive at the intention of the parties. * * * Where the writing expressly refers to a conversation between the parties in reference to the subject-matter, the courts generally admit evidence of the conversation.'' 20 Am. Jur., Evidence, Sec. 1161, p. 1015.

We are therefore of the opinion that the testimony introduced in the trial court was admissible, and that it was sufficient, if believed by the jury, to establish that the flocks of chickens sold by appellee prior to the date of the memorandum-contract were in fact sold to Valley Mills. The balance of the purchase price due appellee for the ''baby chicks'' furnished the customers of Valley Mills on its order and credit was properly admitted in evidence as a set-off against the amount due by Southeastern Hatcheries to Valley Mills.

There are other meritorious points presented by the briefs. However, since we have decided that the testimony was admissible, the verdict of the jury on the facts should be, and is, affirmed.

Affirmed.

*McGehee, C. J., Kyle, Gillespie and Jones, JJ.,* concur.