**John H. FREEMAN, Jr., d/b/a Freeman Electric Gin Company, Appellant,**

v.

**CONTINENTAL GIN COMPANY, Appellee.**

No. 23691.

United States Court of Appeals
Fifth Circuit.

July 13, 1967.
Rehearing Denied Oct. 20, 1967.
See 384 F.2d 365.

Norman Craig Brewer, Jr., Greenwood, Miss., John C. Satterfield, Yazoo City, Miss., J. Dudley Buford, Jackson, Miss., Brewer, Deaton & Evans, Greenwood, Miss., Satterfield, Shell, Williams & Buford, Yazoo City, Miss., for appellant.

I. T. Cohen, Atlanta, Ga., Charles Clark, Jackson, Miss., Cohen, Kohler, Barnwell & Chambers, Atlanta, Ga., Cox, Dunn & Clark, Jackson, Miss., of counsel, for appellee.

Before COLEMAN and DYER, Circuit Judges, and ESTES, District Judge.

ESTES, District Judge:

On July 4, 1962, John H. Freeman, Jr. signed a printed form contract, witnessed by representatives of the Continental Gin Co., by which Freeman agreed to purchase from Continental a substantial amount of machinery and equipment with which to replace an existing cotton gin. The contract was filled out before it was signed, except that it did not then list in detail the items to be purchased by Freeman nor the items he was trading in on the purchase. At the time the contract was signed, it called for the purchase of "Partial 3–119 Saw Ginning Outfit consisting of the following—." An itemized list of the machinery and

equipment required had been furnished Freeman previously, and it was examined by him and by the representatives of Continental at the time the contract was signed. Thereafter the contract was sent to Continental, the list of property to be purchased and to be traded in were inserted, and the contract was formally accepted by Continental on July 26, 1962, with certain modifications contained in Continental's letter of that date to Freeman by which Freeman's copy of the contract was returned. The contract as approved and accepted by Continental was received and accepted by Freeman on July 30. The machinery and equipment called for by the contract were delivered to Freeman in the next two months. Freeman has never paid for this equipment.

On April 10, 1964, Continental sued Freeman in the court below. Count I of the complaint was a claim for the purchase price, together with interest and, as provided by the contract, a reasonable attorneys' fee. Count II was a claim on an open account for miscellaneous parts and repair items sold to Freeman after the contract just described.

Freeman's deposition gives a very different picture of this transaction. According to Freeman, he had had several conversations with Vandergriff, the president of Continental Vandergriff told him that he understood Freeman was thinking about putting in a new gin and that he, Vandergriff, had some new ideas that had not been tried out before and that he would like to try out on an experimental basis. Vandergriff told Freeman that if he would let these ideas be tried in his new gin, Continental would make it work or come and do what was necessary, and if they could not do that, they would take it back. Vandergriff also told Freeman that the new gin would be in operation in time for the 1962 ginning season and that a representative of Continental would follow the job closely. On the basis of these assurances, Freeman signed the July 4 contract. Shortly thereafter, an employee of Continental arrived and dismantled Freeman's former gin and prepared to build the new one. This person proved to be incompetent, and Continental later took him off the job and replaced him with another employee. The equipment for the new gin was slow in arriving, and much of it was defective in one way or another. Continental did not provide proper engineering plans for the new gin, as it had promised to do. Because of this, the new gin did not work at all until the 1962 ginning season was virtually over; and though it is still in use by Freeman, it has never worked properly.

By answer and counterclaim, Freeman asserted that Continental had breached the agreement between them by failing to construct the facility in the time and manner it had agreed. Freeman denied that he was liable to Continental, and claimed substantial damages he had allegedly suffered because of the breaches by Continental. Each party moved for summary judgment on the basis of Freeman's deposition.* The trial court denied Freeman's motion. It granted Continental's motion as to Count I, reserving for a later hearing the amount of the attorneys' fee to which Continental was entitled. It also granted Continental's motion as to Count II to the extent that Freeman had not disputed certain items, reserving for later hearing items claimed in the open account about which there was dispute. The basis for these rulings by the court was set forth by it in a thorough opinion. 237 F.Supp. 240. Nine months later Freeman moved to reopen the summary judgment and to amend his answer and counterclaim to allege fraud on the part of Continental. This motion was denied by the district court, with opinion. 39 F.R.D. 351. Thereafter a hearing was held, the matters which had been previously reserved were resolved by the court, and the court entered a final judgment that on Count I Continental take $89,008.-09, plus interest of $18,708.68 and an at-

---

* Continental also submitted affidavits in opposition to Freeman's motion for summary judgment, but on the view we take of the case we do not consider them.

torneys' fee of $10,000, and that on Count II Continental take $7,278.68, plus interest of $1,382.95. From this judgment Freeman appeals.

■ The appeal raises two questions for our consideration: (1) did the district court err as a matter of law in granting sumary judgment to Continental? (2) did the district court abuse its discretion in refusing to give Freeman leave to amend? In this diversity case, "Federal courts are to apply [Mississippi] state substantive law and federal procedural law." Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

### I. Grant of Summary Judgment

■ On the facts it may at first blush seem odd that the district court, on motion for summary judgment, has ordered Freeman to pay Continental the contract price for equipment that did not work as Continental had promised it would. This, however, assumes the truth of what Freeman testified to in his deposition. Although the trial court, on Continental's motion for summary judgment, was required to accept Freeman's deposition as true, it could give weight to it only to the extent that it set forth "such facts as would be admissible in evidence." Fed.R. Civ.Proc. 56(e). This involves consideration of the misnamed "parol evidence rule." It may be true, as distinguished scholars have urged, that this rule "scarcely deserves to be called a rule of evidence of any kind, and [is] a rule that is as truly applicable to written evidence as to parol evidence." 3 Corbin, Contracts § 573, p. 358 (1960 rev.). See also Thayer, Evidence 409 (1898); 9 Wigmore, Evidence § 2400 (3d ed. 1940). The view of the Mississippi Supreme Court, controlling here, is that "there is no better settled rule of evidence than that which declares that parol testimony is inadmissible to contradict, or substantially change, the legal import of a written agreement." Valley Mills, Division of the Merchants Company, Inc. v. Southeastern Hatcheries of Mississippi, Inc., 245 Miss. 71, 145 So.2d 698, 702 (1962). If Freeman's testimony could properly be

considered by the court, then it would be clear that the judgment below must be reversed. But if Freeman's version of the events surrounding the contract would be inadmissible in evidence as a matter of law, then the grant of summary judgment was right.

■ Whether or not the "parol evidence rule" is properly regarded as a rule of evidence, it is settled that for purposes of the Rules of Decision Act, 28 U.S.C. § 1652, a federal court in a diversity case must apply the rule as the state court would. Sperry Rand Corp. v. Industrial Supply Corp., 337 F.2d 363, 371 (5 Cir., 1964); 2B Barron & Holtzoff, Federal Practice and Procedure § 962, p. 220 (Wright ed. 1961). Freeman's deposition is parol testimony. If it substantially changes the legal import of the written agreement between the parties, it is inadmissible, and was properly disregarded by the district court, unless it falls within some exception to the "parol evidence rule" recognized in Mississippi.

■ Mississippi recognizes the common exceptions to the "parol evidence rule." Three of these are discussed in the *Valley Mills* case, quoted above. Extrinsic evidence will be admitted to show the intent of the parties if the written instrument is ambiguous or indefinite. 145 So.2d at 702. Extrinsic evidence may be given of a distinct, valid, contemporaneous agreement between the parties that was not reduced to writing if this evidence is not in conflict with the provisions of the written agreement. 145 So.2d at 702. If the written agreement expressly refers to discussions between the parties, those discussions are admissible. 145 So.2d at 703. The last of these exceptions has no application in this case. Although it is clear that the written agreement here did follow discussions between the parties, there is no reference to those discussions in the writing itself. Whether the writing is ambiguous, and whether the oral testimony shows a contemporaneous collateral agreement, are questions that require closer examination of the contract documents.

The written instruments clearly and unambiguously create a contract for the sale of specified personal property f. o. b. Continental's factory. The first paragraph of the form contract says:

"Please ship to the undersigned purchaser or purchasers (hereinafter referred to as 'the purchaser') between July 20 and Aug. 1, 1962, or as soon thereafter as possible, the machinery or articles herein described, under and upon warranty provided on back hereof. It is understood that the purchaser approves specifications herein contained and agrees to purchase, and upon your acceptance you agree to sell, machinery and/or articles specified and upon the terms and conditions herein expressed."

After description of the machinery and equipment covered by the contract, there is a price clause, as follows: "The price fob. factories of the machinery or articles herein sold is to be $90,000 Ninety Thousand and no/100 dollars." A later provision says: "The purchaser agrees to receive the machinery or articles promptly on arrival and pay the freight and charges on same." In the letter of July 26 which was incorporated by reference prior to final approval of the contract by the parties, it is said that "this order does not include the freight."

Other provisions in the writings further negative any contention that the parties had contracted for the sale of an operating gin in Freeman's plant. The form contract includes the following paragraph:

"It is understood that if the purchaser desires to employ a contractor to superintend the erection of said machinery, the seller will see to it that the purchaser is offered an opportunity to employ a contractor for a sum of not to exceed $4.00 per man hour. The purchaser agrees to pay the contractor for time from starting point to the place of erection and return, and also to pay all traveling and other expenses of contractor or contractor's employees from starting point to place of erection and return. Purchaser agrees to furnish contractor with any help contractor may need and to furnish any additional materials needed and not covered by the terms of this contract so as to complete the erection of the machinery with dispatch. Should the purchaser employ a contractor recommended by the seller it is expressly understood and agreed that the contractor is an independent contractor and not an agent or employee of the seller, and the seller shall not be liable under any circumstances to the purchaser for the work of the contractor nor shall the seller be liable to the purchaser if seller is not able to find a contractor to recommend to the purchaser."

In the letter of July 26, Continental made reference to that paragraph when it said: "Please contact our Memphis Office in the event the services of an erector will be required to superintend the installation of this machinery, in accordance with clause in contract pertaining to erectors."

Finaly, the contract contained a very limited warranty and an express disclaimer of other warranties. The final paragraph of the contract, immediately above Freeman's signature, is as follows:

"When this order is accepted by the seller, it is understood and agreed that same, together with the warranty on the back hereof, which the purchaser expressly declares that he has read and understands, shall be and constitute the entire contract between the purchaser and the seller, and that no agreement, verbal or otherwise, other than as set forth herein, forms any part of this contract."

The warranty on the back of the contract is lengthy. It begins by warranting the property covered by the contract to be free of defects in workmanship and material in normal use and service. It then proceeds to define narrowly the obligations of the seller, and the rights and remedies of the purchaser. In essence, the purchaser is given the right of returning to the seller, within ninety days after delivery, any part or parts of the warranted property claimed to be defect-

ive, and they will be repaired or replaced by the seller if they prove to be defective, without cost to the purchaser. It is also provided that upon receiving notice of any claimed defect in the warranted property, the seller may at its option send an agent or agents to examine the property or to remedy or assist in remedying such claimed defect, "but such action by seller shall in no event be deemed an acknowledgment on its part of a breach of the within contract or of this warranty, and shall in no event confer upon purchaser, by waiver or otherwise, any right or remedy other than" to have defective parts repaired or replaced as earlier provided. Finally, there is a disclaimer of other warranties:

> "Seller makes no warranty or representation with reference to the said machinery or articles except as hereinabove provided, and purchaser, by entering into the within contract, agrees that no other or different warranty or representation is to be implied."

At his deposition Freeman testified that at no time had Continental failed to send him a replacement item for any part covered by the contract that he returned as defective within the ninety-day period in the warranty.

■ If the writing were ambiguous, then summary judgment would be improper, for the intent of the parties would then be a genuine issue of material fact. Severson v. Fleck, 251 F.2d 920 (8 Cir., 1958); Boro Hall Corp. v. General Motors Corp., 164 F.2d 770, 771-772 (2d Cir., 1947); Detsch & Co. v. American Products Co., 152 F.2d 473 (9 Cir., 1945). But the preliminary question whether an ambiguity exists is not a question of fact and is for the court to decide. United States v. Northern Pacific Ry. Co., 188 F.2d 277, 280 (8 Cir., 1951); Whiting Stoker Co. v. Chicago Stoker Corp., 171 F.2d 248, 251 (7 Cir., 1948); Golden Gate Bridge & Highway Dist. v. United States, 125 F.2d 872, 875 (9 Cir., 1942). See, for example, Upper Mississippi Towing Corp. v. Calmes, 162 F.2d 177, 179

(5 Cir., 1947), where this court affirmed the action of a district court in dismissing an action because "the precise and unambiguous stipulations of the written contract stand as a complete barrier to plaintiff's suit." The ruling of the court that there is no ambiguity in the writing may take many procedural forms. The court may, as in the case just cited, dismiss an action. It may direct a verdict. It may exclude extrinsic evidence of intent. Or it may, as here, grant summary judgment. The mere raising of an unfounded charge of ambiguity does not bar summary judgment where the charge is disproven by undisputed documentary evidence. Church v. Bobbs-Merrill Co., 170 F.Supp. 32, 36 (S.D.Ind., 1959), affirmed 272 F.2d 212 (7 Cir., 1959). "Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." Whiting Stoker Co. v. Chicago Stoker Corp., 171 F.2d 248, 250-251 (7 Cir., 1948). Indeed, in determining the meaning of a writing, the court is required to look to all operative usages and all relevant circumstances "other than oral statements by the parties of what they intended it to mean." Restatement, Contracts § 230 (1932).

■ The trial court found that "the language of the contracting documents now before this court are clear and unambiguous." We agree. This exception to the "parol evidence rule" is therefore not applicable in this case.

■ Freeman's principal contention is that the promises described in his deposition were a contemporaneous collateral agreement, and that evidence of them is admissible under that exception to the rule. It "has almost universally been held," Jones on Evidence (5th ed.) § 471, and the uniform teaching of the Mississippi cases is, that it is for the court to decide whether an oral promise comes within the collateral agreement exception. This determination by the court is regarded in Mississippi as either a ruling on the admissibility of evidence or as ground for a peremptory instruction E. g., Divelbiss v. Jones, 164 Miss. 111, 144

So. 464 (1932); King v. Ainsworth, 225 Miss. 248, 83 So.2d 97, 99 (1955); Memphis Automatic Music Co. v. Chadwick, 164 Miss. 635, 146 So. 137 (1933); Stribling Brothers Machinery Co. v. Girod Co., 239 Miss. 488, 124 So.2d 289, 293 (1960). The Seventh Amendment does not require a different result in a federal court. In a case strikingly similar to ours on its facts, the Supreme Court has said that "whether the written contract fully expressed the terms of the agreement was a question for the court * * *." Seitz v. Brewers' Refrigerating Machine Co., 141 U.S. 510, 517, 12 S.Ct. 46, 48, 35 L.Ed. 837 (1891). See also Southwestern Packing Co., Inc. v. Cincinnati Butchers' Supply Co., 139 F. 2d 201 (5 Cir., 1943); South Florida Lumber Mills v. Breuchaud, 51 F.2d 490, 493 (5 Cir., 1931).

 The district judge, well versed in Mississippi law, concluded that the circumstances described by Freeman's testimony do not show a collateral agreement properly provable by parol testimony within the meaning of the Mississippi cases. We give great weight to the view of the state law taken by a district judge experienced in the law of that state, although of course the parties are entitled to review by us of the trial court's determination of state law just as they are of any other legal question in a case. See Wright, Federal Courts 206 (1963).

Three separate lines of analysis persuade us that the district court reached a correct conclusion on the application of Mississippi law to the facts of this case.

 First, proof of oral collateral agreements is limited in Mississippi, as elsewhere, to those that are "not in conflict with the provisions of the written agreement." Valley Mills, Division of the Merchants Co., Inc. v. Southeastern Hatcheries of Mississippi, Inc., 245 Miss. 71, 145 So.2d 698, 702 (1962), citing Jones on Evidence (2d ed.) § 439 and (5th ed.) § 471. Freeman's oral testimony depicts an undertaking by Continental to sell him a properly operating cotton gin. The written agreement is for a sale of machinery. It gives the buyer the option to have the seller recommend a contractor to superintend the erection of the machinery, but it provides in clear terms that such a contractor would not be the agent of Continental and that Continental is not responsible for his work. This clearly conflicts with any obligation of Continental to superintend the construction of the gin. The written agreement has a very limited warranty, which has been complied with, and expressly disclaims all other warranties. This clearly conflicts with any guarantee by Continental that the gin would operate properly by a specified time. It is "not permissible to so alter, vary, or add to the written contract." Edrington v. Stephens, 148 Miss. 583, 114 So. 387, 389 (1927).

Second, in the Valley Mills case, supra, the Mississippi Supreme Court cited § 240 of the Restatement of Contracts in support of its understanding of the collateral agreement exception. The Restatement provides that a collateral agreement is provable if it is "not inconsistent with the integrated contract" and is either made for separate consideration—a circumstance not applicable here —or "is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract." It thus becomes relevant to consider whether it would be natural for persons entering into a written contract for $90,000 worth of machinery to leave to a supplemental oral agreement features of the contract as important as those now relied on by Freeman. The Mississippi Supreme Court says: "An experienced business man, who discusses a transaction for several hours with an agent, and then deliberately sits down and signs the contract and notes, ought not to be heard to say that he did not understand so plain a transaction, and that an oral understanding had contemporaneously with the written contract, may be shown to contradict the written instrument." Brenard Mfg.

Co. v. Sumrall, 139 Miss. 507, 104 So. 160 (1925).

■ Third, the written agreement provides in terms that it is "the entire contract between the purchaser and the seller, and that no agreement, verbal or otherwise, other than as set forth herein, forms any part of this contract." 3 Corbin, Contracts § 578, p. 403 (1960 rev.), states that such a declaration is "conclusive," citing, among many other authorities, Creek-Neal Coffee Co. v. Morrison-Hinton Grocery Co., 96 Miss. 835, 51 So. 1 (1910). McCormick, Evidence § 222, p. 451 (1954), states it to be the rule that: "As against a claim by the party, when sued on the writing, of a collateral promise or warranty, the merger clause has generally been accepted as a practically automatic and conclusive answer to such a claim." That Mississippi regards such a clause as conclusive is well settled. The Mississippi Supreme Court has held that where a written contract provided that the conditions and stipulations set out therein could not be altered or varied by any verbal agreement or understanding between the parties, an objection to oral testimony contradicting the writing was properly sustained. Parker v. McCaskey Register Co., 177 Miss. 347, 171 So. 337, 339 (1936). It has held that evidence of an oral agreement as to the amount to be paid was not admissible where a contract provided that "no agreement, promise, representation, statement or warranty, either oral or written, express or implied, shall be binding on the holder unless expressly contained herein." King v. Ainsworth, 225 Miss. 248, 83 So.2d 97, 99 (1955).

The Mississippi case closest to ours is Stribling Brothers Machinery Co. v. Girod Co., 239 Miss. 488, 124 So.2d 289, 291–292 (1960). There the machinery company sued on a note given in payment for an electric set and a marine engine. The buyer denied the indebtedness and counterclaimed, asserting that the machinery was defective and wholly unsuitable, that the buyer had relied on promises of the machinery company's agent that the equipment would perform the job, and that the buyer was entitled to damages for costs of repairs and lost profits. It was held that "the trial court erred in submitting to the jury any issues stemming from" the count in the counterclaim dealing with the electric set. The buyer had ordered the electric set by signing an order form that disclaimed all warranties, except that the seller would replace defective parts returned within a certain time. The writing also recited that it "will cover all agreements between the parties relative to this transaction, and that the seller is not bound by any representations or terms made by any agent relative to this transaction which are not embodied herein." The Mississippi court held that the disclaimer of warranties, other than that stated on the form, was effective, and that testimony of oral representations by the machinery company's representative that this was the proper equipment for the job was erroneously admitted. "Evidence of contemporaneous oral agreements and representations varying, modifying, or controlling the written agreement is inadmissible, where the contract expressly states that it contains the entire agreement of the parties." 124 So.2d at 293. That principle of Mississippi law is controlling in this case.

■ This is an issue properly resolved on motion for summary judgment. A particularly instructive case is Boro Hall Corp. v. General Motors Corp., 164 F.2d 770 (2d Cir., 1947). Two separate claims were involved in that case, and defendant's motion for summary judgment had been granted as to both. The opinion of the Second Circuit is by the late Judge Jerome N. Frank, who was, during his lifetime, a leading critic of the use of summary judgment. See 3 Barron & Holtzoff, Federal Practice and Procedure § 1235, pp. 150–152 (Wright ed. 1957). The court, through Judge Frank, reversed the judgment on one of the counts, determining as a matter of law that the writing was ambiguous and that therefore extrinsic evidence was admissible as to its meaning. On the other count, however, it held that a provision in the

writing that there were "no oral or other agreements or understandings" was controlling. The extrinsic evidence offered "would be proof of an understanding at odds with the integrating instrument, not an aid to its meaning. There was, therefore, no triable issue of fact on this cause of action, and the summary judgment with respect thereto was correct." 164 F.2d at 772–773. See also Russell v. Barnes Foundation, 50 F.Supp. 174 (E.D.Pa.1943). We have no doubt that Freeman's testimony would be "at odds with the integrating instrument" and inadmissible under Mississippi substantive law. The granting of summary judgment in this diversity case was correct.

## II. Refusal of Leave to Amend

The other issue presented by the appeal may be readily disposed of. This action was commenced on April 10, 1964. The parties and the court proceeded expeditiously, and summary judgment was granted Continental on January 2, 1965, subject to a later hearing to determine the size of the attorneys' fee to be awarded Continental on Count I, and the amount due on the open account pleaded in Count II. More than eight months after the grant of summary judgment and shortly before the October term of the district court was to open, Freeman filed, on September 7, 1965, a motion to amend his answer and counterclaim; and on October 6, 1965, Freeman filed his motion to set aside or reopen the summary judgment previously granted, and for leave to amend his answer and counterclaim. The proposed amendment would have charged Continental with fraud in making the oral promises and representations earlier held properly excluded under the "parol evidence rule" when offered to show breach of contract. These motions were denied by the district court.

■ It is clear, of course, that the "parol evidence rule" does not bar extrinsic evidence to show fraud. McArthur v. Fillingame, 184 Miss. 869, 186 So. 828, 829 (1939); Restatement, Con-

tracts § 238(b) (1932). Whether the facts alleged by Freeman would support a charge of fraud is extremely doubtful. In Mississippi, fraud "must relate to past or presently existing facts, as facts, and cannot consist of promises, except in some cases when a contractual promise is made with the present undisclosed intention of not performing it. * * * But the mere fact that a promise was broken is not in itself sufficient proof that the promisor so intended at the time made, for this would be, in practical effect, to convert the exception into the general rule." McArthur v. Fillingame, 184 Miss. 869, 186 So. 828, 829 (1939). See also Brown v. Ohman, 42 So.2d 209, 215 (Sup.Ct.Miss. in banc, 1949). Thus the proposed amendment might well have been refused on the ground that it would be futile. The trial court, however, denied leave to amend because of undue delay in making the motion. The question is whether it abused its discretion in so ruling.

■ Rule 15(a) requires leave of court for such an amendment as this, but says that "leave shall be freely given when justice so requires." As this court has observed before, this "is not a mechanical absolute and the circumstances and terms upon which such leave is to be 'freely given' is committed to the informed, careful judgment and discretion of the Trial Judge as he superintends the development of a cause toward its ultimate disposition." Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69, 75 (5 Cir., 1961). In that case, the refusal to permit amendment where no reason whatever had been offered for denying leave was reversed. Where the trial court has had a reason for refusing to allow amendment, this court has left its action undisturbed. Jones v. Metzger Dairies, Inc., 334 F.2d 919, 926 (5 Cir., 1964); Calhoun County, Fla. v. Roberts, 148 F.2d 901, 904 (5 Cir., 1945). In Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court held that though leave is to be "freely given," it need not be allowed if there is some

"apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

It is clear that lack of diligence is reason for refusing to permit amendment. So holding is Wheeler v. West India S.S. Co., 205 F.2d 354 (2 Cir., 1953), a decision concurred in by the draftsmen of the Federal Rules. Where there has been such lack of diligence, the burden is on the party seeking to amend to show that the delay "was due to oversight, inadvertence, or excusable neglect." Frank Adam Electric Co. v. Westinghouse Electric & Mfg. Co., 146 F.2d 165, 167 (8 Cir., 1945). Leave will be denied unless he shows some "valid reason for his neglect and delay." Carroll v. Pittsburgh Steel Co., 103 F.Supp. 788, 790 (W.D.Pa.1952).

The motion to amend in this case was made more than three years after the events in question had occurred. It was made fourteen months after the filing of Freeman's original answer, in which no claim of fraud was raised, and more than eight months after the court had granted summary judgment to Continental. In his brief in this court, Freeman suggests that extended negotiations for settlement after the grant of summary judgment accounted for the delay in then presenting his proposed amendment. There is nothing in the record to support this; and counsel for Continental, in their brief, deny its correctness in point of fact. Even assuming, however, that this would be a sufficient explanation for the delay from January to September, it does not explain the failure to propose such an amendment prior to the grant of summary judgment. The facts on which the claim of fraud is based were fully known to Freeman from the outset of the lawsuit and, indeed, were relied on by him, though under a different theory, in his original answer. It was not until that theory was rejected by the trial court—correctly as we have held above—that the amendment was tendered seeking to make out a showing of fraud from those facts.

A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but "equal attention should be given to the proposition that there must be an end finally to a particular litigation." Friedman v. Transamerica Corp., 5 F.R.D. 115, 116 (D.Del., 1946). Some courts have refused as untimely amendments sought after a motion for summary judgment has been made. E. g., Eisenmann v. Gould-National Batteries, Inc., 169 F.Supp. 862, 864 (E.D.Pa., 1958); Gaylord Shops, Inc. v. South Hills Shoppers' City, Inc., 33 F.R.D. 303 (W.D.Pa., 1963). There is even more reason for refusing to allow amendment long after summary judgment has been granted. See County of Marin v. United States, 150 F.Supp. 619, 623 (N.D.Cal., 1957), reversed on other grounds, 356 U.S. 412, 78 S.Ct. 880, 2 L.Ed.2d 879 (1958); Carroll v. Pittsburgh Steel Co., 103 F.Supp. 788 (W.D.Pa., 1952). This court has frequently cautioned against use of summary judgment procedure in cases for which that procedure is not designed. E. g., Whitaker v. Coleman, 115 F.2d 305, 307 (5 Cir., 1940); Alabama Great Southern R. Co. v. Louisville & Nashville R. Co., 224 F.2d 1, 5, 50 A.L.R.2d 1302 (5 Cir., 1955); Gauck v. Meleski, 346 F.2d 433 (5 Cir., 1965). It has been equally insistent, however, that in the kind of case defined in Rule 56, where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, "summary judgments are looked upon with favor." United States for Use of Edward E. Morgan Co. v. Maryland Cas. Co., 147 F.2d 423, 425 (5 Cir., 1945); Bruce v. Travelers Ins. Co., 266 F.2d 781, 786 (5 Cir., 1959); also see O'Neill v. Corporate Trustees, Inc., 376 F.2d 818 (5 Cir., 1967). Much of the value of

summary judgment procedure in the cases for which it is appropriate—and we have held this to be such a case—would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory.

We deem that these principles apply equally to so much of the proposed amended answer as purported to be a supplemental pleading under Rule 15(d).

 We hold that a district court does not abuse its discretion in refusing to allow amendment of pleadings to change the theory of a case if the amendment is offered after summary judgment has been granted against the party, and no valid reason is shown for failure to present the new theory at an earlier time.

The judgment of the district court is in all things

Affirmed.